UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


UNITED STATES OF AMERICA,    )
    )
          Plaintiff,    ) CAUSE NO.:
    ) 1:16-CR-00040-RLM/TAB
    ) Indianapolis, Indiana
    -v-    ) **December 15th, 2017**
    ) 10:30 a.m.
RICHARD HAUGHT,    )
    )
          Defendant.    )



**Before the Honorable
JUDGE ROBERT L. MILLER**


OFFICIAL REPORTER'S TRANSCRIPT OF
CHANGE OF PLEA & SENTENCING HEARING


**For Government:**    William L. McCoskey., Esq.
    Assistant U.S. Attorney
    United States Attorney's Office
    10 West Market Street
    Suite 2100
    Indianapolis, IN 46204


**For Defendant:**    Gwendolyn M. Beitz, Esq.
    Indiana Federal Community Defenders
    111 Monument Circle
    Suite 3200
    Indianapolis, IN 46204


**Court Reporter:**    Laura Howie-Walters, FCRR, CSR, RPR
    Official Court Reporter
    United States District Court
    46 E. Ohio Street
    Room 217
    Indianapolis, Indiana 46204

PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT PRODUCED BY ECLIPSE NT COMPUTER-AIDED TRANSCRIPTION

2

1              (Open court.)

2          THE COURT:  You may be seated.  Good morning.  This

3  is criminal cause No. 1:16-cr-40, United States versus Richard

4  Haught.  We are gathered, as I understand it, for a change of

5  plea and for sentencing.  I do better on the changes of plea

6  if we're up here at the lectern.

7          MS. BEITZ:  Yes, Your Honor.

8          THE COURT:  Come on up, and if I could ask you

9  folks to state your appearances for the record.

10         MR. McCOSKEY:  Good morning, Your Honor.  Will

11 McCoskey on behalf of the United States.  I'm joined at

12 counsel's table by ATF Special Agent Eric Jensen, and then to

13 Agent Jensen's right, HSI Special Agent Bill Birkofer.

14         THE COURT:  Okay.  And for the defense?

15         MS. BEITZ:  Good morning, Your Honor.  Gwendolyn

16 Beitz from the Federal Community Defender's Office

17 representing Mr. Haught.

18         THE COURT:  Good morning to both of you.

19         Are you Richard Haught?

20         THE DEFENDANT:  Yes, I am.

21         THE COURT:  Mr. Haught, it's my understanding that

22 you want to do a couple of things today.  First, you want to

23 change your plea with respect to two counts of the indictment

24 from not guilty to guilty; and secondly, that after that is

25 accomplished, that you want to proceed with the sentencing

1    hearing today.  Do I understand that correctly?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  For you to do the change of plea, there

4    are certain things we have to talk about, and I'll be asking

5    you questions and explaining things as we go along.  It's very

6    important that you understand my explanations, and very

7    important that you understand my questions.  So if at any

8    point you don't understand what I'm saying or asking, please

9    tell me and I'll try to say it better.  All right?

10             THE DEFENDANT:  Okay.

11             THE COURT:  Your answers to the questions are also

12   very important.  So if at any time before answering a question

13   you want a minute to think or to talk to Ms. Beitz, please

14   tell me and I'll be happy to give you that time.  Okay?

15             THE DEFENDANT:  Okay.

16             THE COURT:  The first thing we have to do is have

17   you placed under oath.  So if you would please raise your

18   right hand and face this gentleman over here.

19             THE DEFENDANT:  I can't raise it much.

20             THE COURT:  As much as you can.

21             (Defendant sworn)

22             You are now under oath, sir.  If you were to answer

23   any questions falsely, those answers could be used against you

24   in another prosecution for perjury or making a false

25   statement.  Do you understand that?

1            THE DEFENDANT:  I do.

2            THE COURT:  How old are you, sir?

3            THE DEFENDANT:  I'm 41.

4            THE COURT:  How far did you go in school?

5            THE DEFENDANT:  High school diploma.

6            THE COURT:  Did you grow up speaking English?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  So you do read, write, speak and

9   understand English?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Are you now or have you recently been

12  under the care of a doctor or a psychiatrist?

13           THE DEFENDANT:  No, sir.

14           THE COURT:  Have you ever been treated for any

15  mental illness or narcotics addiction of any kind?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Tell me about that.

18           THE DEFENDANT:  I was -- I had some herniated disks.

19  I had a back injury roughly ten years ago, and I was

20  given pain medicine for that, Hydrocodone, and slowly but

21  surely became addicted to that.  And over the course of

22  probably the last five or six years, I've gotten treatment

23  from a Suboxone doctor for treatment to stop using pain

24  medicine, and it's -- nothing's been successful.

25           THE COURT:  In the last 24 hours, have you taken any

1   medicine, drugs, pills or alcohol?

2           THE DEFENDANT:  No, sir.

3           THE COURT:  Ms. Beitz, do you have any concern about

4   Mr. Haught's competency to proceed today?

5           MS. BEITZ:  No, Your Honor.

6           THE COURT:  And Mr. McCoskey, does the Government

7   have any such concern?

8           MR. McCOSKEY:  No, Your Honor.

9           THE COURT:  Mr. Haught, have you received a copy of

10   the indictment in this case, the charging paper?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Have you gone over it with Ms. Beitz?

13           THE DEFENDANT:  Yes, I have.

14           THE COURT:  Have you told her everything she needs

15   to know about the case to represent you here in court and to

16   advise you as to how to proceed?

17           THE DEFENDANT:  I believe so.

18           THE COURT:  Are you satisfied with the job that

19   she's done for you?

20           THE DEFENDANT:  I think she's done an excellent job.

21           THE COURT:  Is there anything she did that you

22   didn't want her to do or anything that she did not do that you

23   wanted her to do?

24           THE DEFENDANT:  No, sir.

25           THE COURT:  I have here a document called Petition

1  to Enter a Plea of Guilty and Plea Agreement.  My copy is
2  18-pages long, and on the last page of my copy, I see
3  Ms. Beitz's signature, I see Mr. McCoskey's signature, and I
4  see the signature of Bradley Blackington, the Chief of the
5  Drug and Violent Crime Unit.  Is this your signature I'm
6  looking at between all those?
7           THE DEFENDANT:  Yes, sir.
8           THE COURT:  Did you read this before you signed it?
9           THE DEFENDANT:  I did.
10          THE COURT:  I also have here a document called
11  Agreed Addendum to Petition to Enter a Plea of Guilty and Plea
12  Agreement, and that one is signed reporting an agreement by
13  Mr. McCoskey; have you seen that?
14          THE DEFENDANT:  Yes, sir.
15          THE COURT:  And do you agree with what's in there?
16          THE DEFENDANT:  Yes, I do.
17          THE COURT:  Finally, I have also a sealed addendum
18  to the petition to enter a plea of guilty, and on the last
19  page of that copy, again I see the signatures of Ms. Beitz,
20  Mr. McCoskey and Mr. Blackington.  Is this your signature I'm
21  looking at on that page?
22          THE DEFENDANT:  Yes, sir.
23          THE COURT:  Did you read all of these before you
24  signed them?
25          THE DEFENDANT:  I did.

7

1           THE COURT:  And it's my understanding that you want

2  to -- based on this, it's my understanding that you want to

3  change your plea with respect to Count 1 and Count 2 of the

4  indictment from not guilty to guilty; is that what you want to

5  do?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  It's very important that all of us, you

8  and me and Ms. Beitz and Mr. McCoskey, understand this plea

9  agreement the same way.  What I'm going to do is first ask

10  Mr. McCoskey to summarize for us the plea agreement as he

11  understands it, the principal terms for our purposes today.

12           Then I'll turn to Ms. Beitz and if she understood

13  anything differently, or if there was something that was not

14  covered as well as it should have been.  Listen carefully to

15  what they say because after I have spoken to them, I'm going

16  to turn back to you and ask if that's how you understood it.

17           Mr. McCoskey?

18           MR. McCOSKEY:  Your Honor, the principal terms of

19  the plea agreement are that the agreement is pursuant to Rule

20  11(c)(1)(c).  The recommended term of imprisonment, as agreed

21  by the parties, would be between 57 and 71 months.  And that's

22  if the defendant pleads guilty, as the Court noted, to Counts

23  1 and 2.

24           The agreement would then require, at the time of

25  sentencing, for the United States to move for dismissal of

8

1   Count 3 and Count 8 of the indictment as to this defendant.

2          The agreement is further modified, as the Court

3   indicated.  There are two addendums, one sealed and one not

4   sealed.  The agreed addendum in essence just fixes a few

5   specific facts contained in the stipulated factual basis

6   portion of the plea agreement.

7          The other one clarifies, and of course requires that

8   the agreement be read as a whole, but clarifies that the

9   agreed term, the C plea of 57 to 71 months, would be

10  contingent on the defendant abiding by the terms contained in

11  that sealed addendum.

12          And then finally, and maybe most importantly from

13  the Government's standpoint, there is an appellate waiver at

14  the end of the agreement that if the Court, of course, agrees,

15  accepts the C plea, and sentences accordingly, that the

16  defendant would waive all appellate rights other than those

17  involved with the 2255, ineffective assistance of counsel.

18          THE COURT:  Thank you, sir.  Ms. Beitz, is there

19  anything you understood differently or additionally?

20          MS. BEITZ:  No, Your Honor.

21          THE COURT:  Mr. Haught, is that how you understood

22  it?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Is there anything that Mr. McCoskey said

25  that didn't quite sound right to you, that you didn't think

9

1  you had agreed to?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Is there anything he didn't say that you

4  think has been promised to you that wasn't mentioned?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  So the whole agreement is what he was

7  just talking about?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  We need to talk about some of these

10 things.  First of all, the law says, and this is in the plea

11 agreement so I assume this won't be new to you, but the law

12 says that people who commit the conspiracy crime charged in

13 Count 1 can be sent to prison for as long as five years, can

14 be fined as much as $250,000, have to pay a special assessment

15 of $100, and can be placed on supervised release for as long

16 as three years, with supervised release being a situation

17 where the person has to follow certain rules the judge sets,

18 and if he breaks those rules, he can be sent back into prison

19 even though he had already served the original prison

20 sentence.

21         The law says that people who commit the crime

22 charged in Count 2 of making a false statement in the

23 acquisition of a firearm can be sent to prison for as long as

24 ten years, can also be fined as much as $250,000, have to pay

25 a special assessment of $100, and again, can be put on

10

1    supervised release for up to three years.

2            So what that means is a person who commits both

3    those crimes can be sent to prison for as long as 15 years,

4    can be fined another $500,000, have to pay a special

5    assessment of $200, and can be placed on supervised release

6    for as long as three years.

7            Is that how you understand that?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Now, the sentencing guidelines are going

10   to play a part in the sentencing decision in your case.  The

11   sentencing guidelines make me answer a series of questions.

12   And once I've answered those questions, the guidelines will

13   recommend a sentencing range that will be much narrower than

14   that zero to 15 that the law would allow.

15           I don't have to pick a sentence within that range

16   under the law with respect to the guidelines.  I'll come

17   around to a different aspect of it with respect to your plea

18   agreement, but I have to find a reasonable sentence.

19           So generally speaking, I can impose any sentence

20   from -- any reasonable sentence from zero to 15 years, but

21   I'll start looking at what the guidelines recommend.  Is that

22   how you understand the process generally?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Now in your case, as I understand it,

25   your plea of guilty is being entered under a provision of the

1   Federal Rules of Criminal Procedure that require me to accept

2   a sentencing recommendation if I'm going to accept the guilty

3   plea.  And as I understand it, the sentencing recommendation

4   that I would have to accept would be a sentence within a range

5   of 57 months at the low end and 71 months at the high end.

6           Again, the law doesn't require me to impose that

7   sentence.  I'm looking for a reasonable sentence.  But if in

8   good conscience I can't accept that requirement in picking a

9   sentence in the 57 to 71 month range, I would tender your

10   guilty plea back to you, your plea agreement, and give you a

11   chance to withdraw it if you want to.  And if you did choose

12   to withdraw it, we would then proceed to a trial on all the

13   original charges.

14           Is that how you understand that?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Now, your plea agreement sets forth a

17   series of understandings of how the guidelines will play out

18   in your case, what offense level will play out.  I assume from

19   that that you and Ms. Beitz have looked over the entire

20   guideline picture and tried to get an idea as to how the

21   guidelines will affect the sentence.

22           Am I right?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Now, those -- and I'm sure that

25   Mr. McCoskey has done the same thing at the other end.  I

1   don't have to agree with those stipulations, and what I come

2   up with might be different when I answer those questions,

3   maybe very different.  Do you understand that?

4              THE DEFENDANT:  Yes --

5              THE COURT:  But I'm not required to accept those.

6              THE DEFENDANT:  -- I do.

7              THE COURT:  As I understand as well, the Government

8   has promised to recommend that when I get to the question as

9   to whether you've accepted responsibility for the crime, that

10  I find that you have.  And if I answer that question in your

11  favor, the guidelines recommend the lower sentencing range.

12  Again, it's recommendation that I'm not required to follow but

13  I'll certainly listen to it and consider it.  Is that how you

14  understand that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Other than what we've talked about, has

17  anybody made any other promises or predictions to you as to

18  what sentence you're going to get in this case?

19             THE DEFENDANT:  No, sir.

20             THE COURT:  Now, there's two other provisions --

21  well, first, has anybody used any force or made any threats

22  against you to get you to plead guilty?

23             THE DEFENDANT:  No, no, Your Honor.

24             THE COURT:  There's two other provisions of the plea

25  agreement that I need to ask you about.  As I understand it,

1  the Government has agreed that at sentencing, assuming that

2  the case proceeds to sentencing, and I accept the binding

3  recommendation, that they'll move to dismiss Counts 3 and 8 of

4  the indictment against you.  Is that how you understand that?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  And then, as I understand it as well,

7  you are aware that people who are sentenced in federal court

8  have the right to appeal their conviction, but as part of your

9  plea agreement, if I accept the requirement that I pick a

10  sentence between 57 and 71 months, you're giving up that right

11  to appeal, and giving up the right to file any later challenge

12  to your sentence or your conviction with one exception, and

13  that is that if the legal representation you receive falls

14  below that constitutional minimum as far as what the law

15  requires for being counsel for a criminal defendant.  Apart

16  from that, you'd have the right to complain if you think that

17  happened, but apart from that, you would give up the right to

18  make any challenge to the conviction or the sentence whether

19  by post-conviction relief, habeas corpus, direct appeal,

20  anything else.  Is that how you understand that?

21            THE DEFENDANT:  It is.

22            THE COURT:  Let me take that from a different angle,

23  too, because it's a very important provision.  If, from here

24  on out, I do anything with respect to the case that you don't

25  think was right, or if Mr. McCoskey, representing the

1  Government, does anything with respect to the case that you

2  don't think was right, or if Ms. Beitz, in trying to represent

3  you, does anything with respect to the case that you don't

4  think was right, as long as it doesn't fall below that

5  constitutional minimum, once we get to the sentencing phase

6  and I impose the sentence, even if whatever went wrong meant

7  your sentence turned out to be longer than it should have been

8  or might have been, you won't have the right to complain about

9  that to this Court or to any other court.  Is that how you

10 understand that?

11         THE DEFENDANT:  Yes, it is, Your Honor.

12         THE COURT:  As I understand it, you want to plead

13 guilty to these charges because you think you're guilty of

14 them; is that correct?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  For you to be guilty, there are certain

17 factors that have to be true.  The law calls those the

18 essential elements of the crime, and "essential" means they

19 have to be there.  I'm going to ask Mr. McCoskey to run

20 through for us what the essential elements are of these

21 crimes.  Listen carefully because this is what happens to be

22 true for you to be guilty.

23         Mr. McCoskey, if you would, please.

24         MR. McCOSKEY:  Your Honor, as to the conspiracy

25 element in Count 1, the defendant must have entered into a --

1  knowingly entered into a criminal agreement, the object of

2  which is to commit a crime, and some overt element -- overt

3  act has to have been committed by a conspirator in furtherance

4  of that conspiracy.

5         The second -- sorry, Judge, I just want to make sure

6  I have the number of the counts here.  As to Count 2, Count 2

7  is the substantive act of committing what we would call a

8  straw purchase, that is, to knowingly make a statement, a

9  false statement, to a federally-licensed firearms dealer, the

10 purpose of which, or the effect of which, would be to mislead

11 the dealer as to the legality of that purchase.  The defendant

12 is charged in Count 2 with committing that crime or aiding and

13 abetting in the commission of that crime, Your Honor.

14         THE COURT:  Okay, thank you, sir.  You understand

15 what has to be true for you to be guilty, Mr. Haught?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Is that how you understood it when you

18 signed the plea agreement?

19         THE DEFENDANT:  I do.

20         THE COURT:  Now starting at page 7, and as amended

21 in the paper that was filed last week, as I understand it,

22 you're telling me that certain facts are true.  And I want to

23 run through these to be sure that we're all on the same page.

24         As I understand it, you're telling me that starting

25 as early as January of 2014, and continuing through at least

1    March of 2015 or 20th of 2015, in the Southern District of

2    Indiana, you and -- you knowingly, intentionally, and

3    willfully entered into an unlawful agreement with others,

4    including Robert Haught and Briana Haught, to provide false

5    information to federally-licensed firearms dealers in

6    connection with the purchase of firearms, and to help deliver

7    and transfer those firearms to people around McAllen, Texas,

8    and that you entered into and furthered the aims of that

9    unlawful agreement with the expectation of financial gain from

10   the sale of those firearms to buyers in Mexico.

11            Is that true?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  As I understand it, you're telling me

14   that on or about January 30th of 2014, you and another person

15   traveled from the Southern District of Indiana to

16   Montoursville, Pennsylvania, where you went to a

17   federally-licensed firearms dealer, and aided and abetted the

18   other person in completing and submitting an ATF Form 4473,

19   falsely saying that that person was the actual purchaser or

20   transferee for two Barrett M82 .50-caliber semiautomatic

21   rifles, when, in fact, both you and the other person knew that

22   the firearms were being bought for someone else.

23            Is that true?

24            THE DEFENDANT:  Yes, yes, it is.

25            THE COURT:  As I understand it, you're telling me

1  that both Barrett rifles had traveled in interstate commerce

2  by that time, in other words, crossed the state line or

3  international boundary line, and that after the purchase, that

4  you had reason to believe that the rifles would be transferred

5  across the Mexican border and transferred to other people in

6  Mexico; is that true?

7           THE DEFENDANT:  Yes.

8           THE COURT:  As I understand it, you're telling me

9  that on or about February 19th of 2014, in the Southern

10  District of Indiana, you aided and abetted, counseled, induced

11  or procured Robert Haught and Briana Haught to travel to a

12  federally-licensed firearms dealer in Forreston, Illinois,

13  where, at your direction or request, Briana Haught knowingly

14  filled out and turned in an ATF Form 4473 that falsely said

15  that she was the actual purchaser or buyer or transferee for

16  two Barrett M82 .50-caliber semiautomatic rifles when, in

17  fact, both she and you knew that the firearms were being

18  purchased on behalf of someone else.

19           Is that true?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And as I understand it, you're telling

22  me that after Robert Haught and Briana Haught transported the

23  rifles back to the area of Indianapolis, you had reasons to

24  believe that the rifles would be transported across the

25  Mexican border, and that the rifles had traveled in interstate

1  commerce at the time that Briana Haught bought them.

2          Is that how you understand that?

3          THE DEFENDANT:  It is.

4          THE COURT:  Do I understand that?  Do I understand

5  that correctly?

6          THE DEFENDANT:  Yes, yes, you do.

7          THE COURT:  As I understand it, you're telling me

8  that on or about March 2nd of 2014, you traveled from the

9  Southern District of Indiana to Youngstown, Ohio, where you

10 went to a federally-licensed firearms dealer, and knowingly

11 completed and submitted the ATF form falsely indicating that

12 you were the actual purchaser, transferee or buyer of two

13 Barrett M82 .50-caliber semiautomatic rifles and two Gun Envy

14 Mk46 .223-caliber semiautomatic rifles knowing that they were

15 actually being purchased on behalf of someone else.

16         Is that true?

17         THE DEFENDANT:  Yes.

18         THE COURT:  As I understand it, you're telling me

19 that all four of those rifles had traveled in interstate

20 commerce, in other words, crossed a state line or a national

21 boundary line when you bought them, and that you had reason to

22 believe that the rifles would be transported and transferred

23 to other people in Mexico.  Is that true?

24         THE DEFENDANT:  It is.

25         THE COURT:  Then finally, as I understand it, you're

19

1  telling me that aside from those trips, you committed multiple

2  other acts in furtherance of the conspiracy in the Southern

3  District of Indiana and elsewhere while you were involved in

4  the conspiracy, that over the course of your involvement in

5  the conspiracy, you either straw purchased or caused to be

6  straw purchased at least eight Barrett

7  .50-Caliber semiautomatic rifles, and four other types of

8  semiautomatic rifles, all of which had traveled in interstate

9  commerce.  And for your role in getting these firearms to

10  people in the McAllen, Texas, area, you received payments from

11  people who were associated with the Mexican firearm

12  purchasers.  Do I understand that correctly?

13          THE DEFENDANT:  You do.

14          THE COURT:  Is there anything in these five

15  paragraphs that isn't a hundred percent correct?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Ms. Beitz, does that satisfy the defense

18  for a factual basis?

19          MS. BEITZ:  It does, Your Honor.

20          THE COURT:  Mr. McCoskey does that satisfy the

21  Government for a factual basis?

22          MR. McCOSKEY:  Yes, Your Honor.

23          THE COURT:  Mr. Haught, these are felony charges,

24  and if I accept your guilty pleas, there will be a felony

25  judgment against you.  That judgment could cost you valuable

1   civil rights, including the right to vote, the right to hold

2   public office, the right to serve on a jury, and the right to

3   possess any kind of firearm.  Do you understand that?

4          THE DEFENDANT:  I do.

5          THE COURT:  If you plead guilty, sir, you're going

6   to give up many rights that you walked into court with today.

7   You've got the right to plead not guilty to these charges and

8   to continue with that plea.  You would then have the right to

9   a trial by jury, which you'd have the right to the assistance

10  of an attorney in your defense.  You'd have the right to see

11  and hear all the witnesses against you and to have them

12  cross-examined in your defense.

13         You'd have the right to use the court's subpoena

14  power to make your witnesses come into court to help tell your

15  side of the story.  You'd have the right to be your own

16  witness, to testify in your own behalf, or you'd have the

17  opposite right, the right to sit at that table and watch as

18  the Government tried to prove you guilty without your help,

19  and nobody could make you testify at that trial unless you

20  decided you wanted to testify.

21         You'd have the right to be presumed innocent at that

22  trial, and in fact, you'd have the right to be found not

23  guilty unless the Government proved each of those essential

24  elements that Mr. McCoskey ran through for us a few minutes

25  ago to each of the twelve jurors beyond a reasonable doubt.

1   And if you were convicted, you'd have the right to appeal that

2   conviction to the United States Court of Appeals in Chicago.

3           Do you understand that as you stand there now,

4   you've got all those rights?

5           THE DEFENDANT:  Yes, I do.

6           THE COURT:  Do you understand if you plead guilty

7   and if I accept your guilty plea, there won't be a trial.

8   You'll have given up that right to a trial and all those

9   rights that go along with a trial that I just described; do

10  you understand that?

11          THE DEFENDANT:  I do.

12          THE COURT:  Do you still want to plead guilty, sir?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Why do you want to plead guilty,

15  Mr. Haught?

16          THE DEFENDANT:  These are all -- this is all true.

17  I don't want to waste the Court's or -- I don't want to waste

18  anyone's time.  This is all accurate.

19          THE COURT:  Ms. Beitz, are you aware of any legal

20  reason why Mr. Haught should not plead guilty?

21          MS. BEITZ:  No, Your Honor.

22          THE COURT:  Mr. McCoskey, is the Government aware of

23  any such reason?

24          MR. McCOSKEY:  No, Your Honor.

25          THE COURT:  Mr. Haught, with respect to the charge

22

1  in the indictment of conspiracy to procure firearms from a

2  federally-licensed firearm dealer through false statements,

3  how do you plead to that charge?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  With respect to Count 2 of aiding and

6  abetting the acquisition of firearms through false

7  statements to a federally-licensed firearm dealer, how do you

8  plead to that charge?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  The Court finds that the defendant is

11  fully competent and capable of entering an informed plea, that

12  his pleas of guilty are knowing and voluntary pleas, each

13  supported by an independent basis in fact containing each of

14  the essential elements of the crimes.  The pleas are therefore

15  accepted and he's now found guilty -- adjudged guilty of those

16  offenses.

17          Mr. Haught, that takes us to the second part of the

18  process today, which is the sentencing phase.  I received a

19  copy of a presentence report that's prepared in your case, and

20  I've read that report.  Have you gone over the report?  Have

21  you reviewed the report?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Have you gone over it with Ms. Beitz?

24          THE DEFENDANT:  I have.

25          THE COURT:  When I ask if you've gone over it with

23

1   her and gone over them yourself, I want to ask specifically

2   about paragraphs 90 and 91, and to refresh your recollection,

3   those are the paragraphs that propose conditions of

4   supervision if you're placed on some kind of court

5   supervision.  Did you review those?

6                   (Off-the-record discussion.)

7                   THE DEFENDANT:  Yes, sir.

8                   THE COURT:  You went over those with Ms. Beitz?

9                   THE DEFENDANT:  Yes, I did.

10                  THE COURT:  Ms. Beitz, have you had enough time to

11  review the report, including the proposed conditions of

12  supervision with Mr. Haught?

13                  MS. BEITZ:  Yes, Your Honor.

14                  THE COURT:  And do I understand correctly that the

15  defense has no objection to the report or to the proposed

16  conditions of supervision?

17                  I would tell you as well, I'm sorry, that I have

18  read the letters of support that you submitted.

19                  MS. BEITZ:  Your Honor, we had submitted one

20  correction, but not an objection.  I'm not sure if the Court

21  wishes to address that, but it is accurate, we do not object,

22  we proposed a correction.

23                  THE COURT:  Oh, I see.  Okay.  I think I considered

24  that included in paragraph 9.  With that addition, do I

25  understand correctly that the defense has no objection to the

24

1    proposed sentence?

2             MS. BEITZ:  Yes, Your Honor.

3             THE COURT:  To the presentence report, including the

4    proposed conditions of supervision?

5             MS. BEITZ:  Correct, Your Honor.

6             THE COURT:  Mr. McCoskey, do I understand the

7    Government's position to be the same?

8             MR. McCOSKEY:  It is the same, Your Honor.

9             THE COURT:  Okay.  I will then adopt as my own

10   findings paragraphs 1 through 89, and 91 through 102 of the

11   presentence report, specifically including paragraphs 54

12   through 57 concerning Mr. Haught's financial condition and

13   earning ability.

14            Step one of the sentencing process is to figure out

15   what the guidelines recommend.  And there is a matter with

16   respect to that calculation, which is one of the few matters

17   that allow either side to ask that the matter be discussed

18   without the presence of others; does the defense wish the

19   courtroom sealed for that purpose.

20            MS. BEITZ:  Yes, Your Honor.

21            THE COURT:  Let me ask those of you who are in the

22   audience, we need to ask you to step out long enough for us to

23   discuss one thing.  When we are done with that, we'll invite

24   you back in, but for right now, we ask you to step out.

25

25

1          (The courtroom was cleared, and the sealed portion

2    of this hearing is contained in a separate transcript.)

3                    (Open court.)

4          THE COURT:  The hearing is now open.

5          Thank you, ladies and gentlemen.  I'm sorry for any

6    inconvenience.

7          Step 1 is to figure out what the sentencing

8    guidelines recommend.  We group together the two counts of

9    conviction and treat them as a single count for purposes of

10   the guideline calculation.

11         We've got a base offense level of 14 for crimes

12   involving illegal possession of firearms.  Mr. Haught was

13   personally involved with at least eight firearms, so his

14   offense level is increased by four levels.

15         The offense level's increased by four more levels

16   because the crime involved firearms with obliterated serial

17   numbers; by another four levels because Mr. Haught engaged in

18   trafficking firearms; and by four more levels because he had

19   reason to believe the firearms would be transferred outside

20   the United States.  And the offense level then is reduced by

21   three levels to reflect his clear and timely acceptance of

22   responsibility reducing the final offense level to 27.

23         The sentencing guidelines assess one criminal

24   history point for the time-served sentence in 2013 for

25   possession of controlled substances.  And that places

26

1  Mr. Haught in criminal history category one, so the sentencing

2  guidelines recommend a sentencing range of 70 to 87 months.

3          I say that recognizing that the final recommendation

4  would involve a sentence of 57 to 71 months.  That's all step

5  one of the sentencing process.

6          Step two is to find a reasonable sentence, which is

7  one that's enough but not more than is necessary to satisfy

8  the purposes of the sentencing statute.

9          Ms. Beitz, do you wish to be heard?

10          MS. BEITZ:  Your Honor, first I'd like to begin with

11  Mr. Haught's allocution.

12          THE COURT:  Okay.  Mr. Haught, I need to tell you

13  you have the right to speak on your own behalf.  You don't

14  have to, and I assume you've discussed this with Ms. Beitz?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Go ahead.

17          THE DEFENDANT:  First and foremost, I would like to

18  apologize to the Court.  I've had much time to reflect over

19  the last 14 months, and I've come to realize the magnitude of

20  what I've done and just what a horrible thing it actually was.

21          I put guns directly in the hands of people who

22  should never have them.  I also put entire communities at

23  risk.  The truth is I will never know the full impact of the

24  choices I've made, and that's something I have to live with.

25          Second, I would like to apologize to my family for

1  all that I put them through over the years with my addiction,

2  and now again with this.  Thank you for always being there.

3  Thank you for always being there for me through thick and

4  thin.  I love you guys.

5       I'd also like to say that while the last 14 months

6  in jail have most certainly been the most traumatic experience

7  of my life, it's also been one of the best things to ever

8  happen to me.  It's helped me like nothing else could, and

9  it's exactly what I needed but just didn't know it.  It

10  brought sobriety in my life for the first time in a decade,

11  and it's allowed me enough idle time for my back injury to

12  heal, or to begin healing, and that in itself is enormous.

13       This has been my biggest hurdle in my life since it

14  was injured roughly ten years ago.  It's also where my

15  addiction to pain medicine began.  This time has also shown me

16  what's truly important in life, and that's not the money I

17  placed so much importance on.  It's my family and all the

18  memories I should be making with them right now.

19       So when my time comes, and I'm given the opportunity

20  to try this again, I'm going to make my mother proud and be

21  the man I was raised to be, the man I was before addiction

22  came into my life.

23       I would also like to say that my biggest regret in

24  all this was the decision to involve my family.  My brother

25  and I have been two peas in a pod since childhood, and have

1   even worked together the majority of our adult lives.  I feel

2   that with him being my youngest brother, he was just doing

3   what he's always done, and that's following my lead, although

4   I was in a haze and under the influence when I made the

5   decision to involve him, really when I made the decisions to

6   get involved in any of this.

7           I know that's no excuse.  I'm the one that's

8   responsible for all this, Your Honor, not my brother.  He

9   would have followed me anywhere.

10          Now I've put my mother at risk of losing not one,

11  but two of her boys, and she's already been through so much

12  with the loss of our father.  Words can't describe how that

13  makes me feel.

14          In closing, there's one last person I'd like to

15  apologize to and that's Angela Smith.  Looking back now, I'm

16  mortified to think about some of the things I said and did

17  when she was only acting in my best interest.  I just couldn't

18  see it at the time, but I see it clearly now.

19          I appreciate what she's done and what she tried to

20  do for me.  So thank you for saving my life even if you didn't

21  realize that's what you were doing.

22          THE COURT:  Thank you, Mr. Haught.

23          Ms. Beitz?

24          MS. BEITZ:  Thank you, Your Honor.  Addiction is a

25  complex, challenging and a continuous theme, I believe, in

1  this case.  And the continuous aspect that whatever time this

2  Court decides to adjudge for Mr. Haught, it is essential that

3  he be recommended to get the treatment while he's

4  incarcerated, and that he be closely monitored when he gets

5  out for that.

6        While he's been clean for the first time in ten

7  years during his incarceration, that was a very, very

8  difficult time.  I can assure this Court that the man standing

9  next to me right now is certainly not the person that walked

10 in for his initial hearing.

11       We struggled greatly with his addiction and getting

12 him to a point where he was able to forcibly get clean.  But

13 since he has done that, as he told you looking back, he is

14 reflecting on his actions.  He's reflecting on how he treats

15 people.  And I think the word mortified at how he has behaved

16 is absolutely appropriate in this case.

17       It's complex because without the addiction, we might

18 not even be here.  As the Court knows, any type of

19 intoxicating substance, be it alcohol or drugs, and certainly

20 painkillers to this level of use dulls your senses and it

21 dulls your judgment.  Things that we would say or do

22 intoxicated is something that we would never do sober.  I

23 believe that falls into the type of actions this Court is

24 dealing with here today.

25       We're not raising a defense to it.  We're not

                                                                    30

1   raising anything that would suggest he's not absolutely

2   responsible, but looking back now at what he did, he can

3   reflect at just how serious it was.  But we ask the Court to

4   note that at the time he was committing these offenses, he was

5   in the throws of that addiction, and probably at the height of

6   his addiction.

7          Using had become everything to him, and any way he

8   could get money to further that addiction is what he was

9   focused on.  But once he got clean, he got sober and he

10  started making right choices.  I think the first obviously is

11  this choice to not put the Court through a trial that would be

12  pointless.  He acknowledges his conduct and he acknowledges

13  that what he did was wrong.

14         His greatest regret is absolutely that you will be

15  seeing not just one Haught, but that you will be seeing

16  multiple.  And regardless of the outcome of those hearings,

17  that is a weight that will stay with him for the rest of his

18  life, but it also is a weight that I think will hold him

19  accountable to the promises he's making to the Court here

20  today.

21         His family had struggled to help him with his

22  addiction.  I don't think there's any clearer message than

23  that from the multiple letters that I submitted on his behalf.

24  But you can only help somebody if they are ready to be helped.

25         Mr. Haught is ready to be helped, and he has shown

31

1  that through his sobriety at the county jail.  And I know that

2  there's always this thought that perhaps maybe well, he's in

3  jail so we expect him to be clean.  That's not always true.

4  The Court is well aware that if he had wanted to obtain

5  narcotics, if he wanted to obtain drugs, sadly, there's always

6  a way to do it in prison, but he's made the choice not to do

7  that.

8        We ask the Court to recommend that he be placed in

9  an RDAP program, that he be placed in a facility at the lowest

10  security classification that he qualifies for as close to

11  Indiana as possible to facilitate rekindling the relationship

12  with his family, and most importantly, to be able to see his

13  son.

14        He wants to be a father again, but he knows that

15  being a father means he has to be there all the time, not just

16  when he wants to be, and that's going to start during the time

17  period this Court is incarcerating him.  So for those reasons,

18  I ask the Court to give him a sentence of 57 months, recommend

19  the RDAP program, and that he be placed as close to Indiana as

20  possible.

21        THE COURT:  Remind me, where in Indiana just in case

22  it's narrowed down or is the family all over?

23        MS. BEITZ:  The family is -- they are in

24  Indianapolis.  However, we're not specifically requesting

25  Terre Haute because without knowing his security

1   classification, I don't know if he would be eligible to go to

2   whatever.  They do have all different levels in Terre Haute,

3   but right now, the concern obviously is the RDAP program, and

4   whether or not they'll have funding at the levels that he

5   would be at.

6           So that's why we're just asking the Bureau of

7   Prisons to put him as close as possible, keeping in mind the

8   treatment that he is requesting and visitation with family.

9           THE COURT:  Okay.  Thank you, ma'am.

10          Mr. McCoskey for the Government?

11          MR. McCOSKEY:  Your Honor, I appreciate the

12  defendant, in his allocution, stated his understanding of the

13  enormity of this offense -- well, offenses with which he's

14  been convicted, because that's absolutely right.  The

15  magnitude of the harm that unfortunately this defendant

16  exposed people to, trafficking weapons of that variety across

17  the border to Mexico, presumably to Mexican drug cartel

18  people, that was dangerous.

19          I can certainly credit what Ms. Beitz said and what

20  the defendant said about him being addicted, and probably was

21  addicted to a quick payoff as well in being involved in this

22  scheme.  In retrospect, I'm sure he understands that he

23  exposed himself, not just other people, but himself and his

24  family to grave harm dealing with people like that.  And those

25  guns aren't going to -- did not go to people who are

1   legitimate gun collectors or whatever.  They went to very bad

2   people.

3            So I appreciate that the defendant has expressed his

4   understanding of that and the magnitude of what he did.  Now

5   that said, Your Honor, the Court is aware not only of the

6   facts of the offense, but also of other things involving this

7   defendant, and it is the position of the United States reflect

8   a reasonable sentence within what the parties have

9   recommended, the range of 57 to 71 months.  I think that's

10  entirely appropriate based on everything that the Court is

11  aware of, and even with this severity of this offense conduct.

12           So just to simply reiterate, Your Honor, I think

13  that the Court should accept the binding plea, and sentence

14  the defendant accordingly within that range of 57 to 71

15  months.

16           THE COURT:  Thank you, sir.

17           MR. McCOSKEY:  Thank you.

18           THE COURT:  Mr. Haught, as I said, my job at this

19  point is to try to find a reasonable sentence, and the law

20  defines that as one that is enough, but not more than is

21  needed to satisfy the various purposes of sentencing set forth

22  in our sentencing statute.

23           We start with what the guidelines recommend.  That's

24  not because the guidelines are always right.  They're not.

25  But what we're hoping to do is try to come up with a system

1  all across the country that reasonably similar people who

2  commit reasonably similar crimes get reasonably similar

3  sentences.  And the guidelines give us our best hope for doing

4  that all across the country.

5          The guidelines, as you heard, recommend a sentencing

6  range of 70 to 87 months.  My discretion in this case is

7  limited at this moment by the requirement under Rule

8  11(c)(1)(c) of the Federal Rules of Criminal Procedure that I

9  impose a sentence between 57 and 71 months.  Again, it's not

10 really a requirement that I impose that sentence, but if we're

11 going to do sentencing today, I have to pick a sentence within

12 that range.  Otherwise, you get a chance to withdraw your

13 guilty plea.

14         As you've heard, the Government, as consistent with

15 the plea agreement, asked that I impose a sentence between 57

16 and 71 months.  Ms. Beitz, on your behalf, has asked the same

17 thing, but even more specifically asked for a sentence at the

18 low end of that range of 57 months.

19         I have to look at the nature and circumstances of

20 the crime, and you helped smuggle some major fire power into

21 Mexico.  The record doesn't reveal, and I don't think you

22 know, who ultimately got the guns in Mexico, or how they were

23 used, but these were not weapons used for sport, for target

24 shooting, for hunting.  They were weapons of war.  You

25 involved family members who now have their own felony records

1   and all that goes along with felony records.

2          On the good side, your guilty plea spared the

3   Government the time and expense of trial preparation, and

4   that's something that has to be taken into account as well,

5   and should be.  I have to look at your history and

6   characteristics, and the main thing is that you are an addict.

7   You're addicted to opioid pain pills.  You started on pills as

8   a treatment for pain for your back surgery about ten years ago

9   with prescribed pills.  You moved from Hydrocodone to

10  Oxycodone to Suboxone.

11         Treatment was tried while you were on pretrial

12  release, but you relapsed pretty quickly, and pretrial release

13  was eventually revoked.  I understand you're feeling

14  considerably better after being 14 months in custody, and I

15  agree with Ms. Beitz that that didn't necessarily require you

16  to be clean the whole time, but it apparently did result in

17  that.

18         I'm looking at a man who's 40 years old, a man whose

19  addiction shines through the personal history and

20  characteristics.  He could not report any employment that

21  could be confirmed.  You supported yourself as a woodworker

22  for the past 20 years, and your family attested to those

23  skills in these letters.

24         You report graduating from high school.  The high

25  school's records, I don't know why, only show attendance

36

1   through the ninth grade.

2           When you were in pretrial release, you lied

3   repeatedly to your pretrial services officer.  She arranged

4   for a mental evaluation, and that evaluation scored you high

5   on narcissism and grandiosity, which may be consistent with

6   drug use.

7           You are in a 12-year relationship, and you have a

8   six-year-old son with whom you have had regular contact.

9           I have to consider the need to protect the public

10  from you in the future.  And that's a hard question to answer

11  but a very easy one to state.  It depends entirely on whether

12  you stay clean and sober after you're released from prison.

13          If you don't stay clean, you'll be the same man who

14  conspired to get powerful weapons into what seems to have been

15  the wrong hands in Mexico.  If you stay clean and sober,

16  society wouldn't appear to need any protection at all from

17  you.

18          I have to consider the need for today's sentence to

19  reflect the seriousness of your crime, to provide a fair

20  punishment for the crime, and to deter other people from

21  committing the same sorts of crimes.

22          The guidelines are usually our best measurement for

23  that because there's no better yardstick on those factors, and

24  I couldn't find a better one here.

25          Finally, I have to consider the need for today's

37

1   sentence to promote respect for the law.  And reasonable

2   uniform sentencing practices generally tend to do that.  I

3   think that's the case with this crime.

4           Ms. Beitz, have I touched on each of your principal

5   arguments?

6           MS. BEITZ:  You have, Your Honor.

7           THE COURT:  And Mr. McCoskey, have I touched on each

8   of your principle arguments?

9           MR. McCOSKEY:  Yes, Your Honor.

10          THE COURT:  There's a policy statement in the

11  sentencing guidelines, and it's only a policy statement.  It

12  doesn't require me to do anything, but it reflects the

13  thinking of the Sentencing Commission.  And it says that when

14  the Court is presented with a binding recommendation under

15  this Rule of Criminal Procedure that isn't within the

16  guideline range -- and there's overlap, part of your sentence

17  is within the guideline range, the sentencing range would

18  be -- I'm supposed to accept that recommendation if there are

19  justifiable reasons for the recommendation being outside the

20  applicable range.

21          In this case, the recommendation for that 57 to 71

22  month range is, for the most part, outside the applicable

23  guideline range, but I think it is for justifiable reasons.

24  Your criminal activity seems to have been driven entirely by

25  your addiction, which began with legitimately-prescribed pain

1  pills rather than a decision to try a controlled substance for

2  recreational purposes, and I think that's important.

3          You haven't yet shown that you will put opioid use

4  behind you, but I know you're trying, and you've taken steps

5  that would make it difficult for you to return to crime.  I

6  think a reasonable sentence can be found in the range on which

7  you and the Government have agreed.

8          The justifiable reasons for the agreed range are

9  offset somewhat by the seriousness of your conduct because

10  everybody involved in this case, I think, will long be haunted

11  by what happened to those .50-caliber semiautomatic rifles,

12  and what harms they might have wrought once they got to

13  Mexico.

14          I do think the seriousness of the conduct requires a

15  sentence higher than the 57 months that Ms. Beitz asked for on

16  your behalf.  I think the sentence at the midpoint of your

17  agreed range of 64 months, a little over five years, I think

18  that is sufficient but not more than necessary to satisfy the

19  purposes of the sentencing statute.

20          So I would propose to impose a 64-month sentence.

21  The statutes of conviction do not require a supervised release

22  term as part of the sentence.  The law lets me impose a

23  sentence of up to a term of three years and the guidelines

24  recommend a supervised release term of at least one but not

25  more than three years.  And I think a three year term is

1  reasonable in this case for I think you'll need extensive

2  treatment and after care, even if you complete the RDAP

3  program, if you're to remain clean and sober when you get out

4  of prison.

5        And frankly, society needs you to be supervised as

6  to whether you stay clean and sober.  So I would propose to

7  impose a three-year supervised release term, the conditions of

8  which would be those conditions set forth in the presentence

9  report that we talked about a little bit earlier.

10       I don't think you can pay the fines that the

11  guidelines recommend.  There will be no fine, but a special

12  assessment of $200 is mandatory, and I will need to impose

13  that.

14       So the sentence I would propose to impose would be a

15  63-month sentence, which actually is 60 months on Count 1 and

16  63 on Count 2, and have them to run concurrently -- I'm sorry,

17  64.  I misspoke because I'm looking for something else here.

18  64 months, and 64 running concurrently followed by a term of

19  supervised release of three years.  No fine.  Special

20  assessment of $200.

21       Do you understand what the proposed sentence would

22  be?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  Ms. Beitz, does the defense have any

25  objection to the proposed sentence?

40

1          MS. BEITZ:  No, Your Honor.

2          THE COURT:  And Mr. McCoskey, does the Government

3     have any objection to the proposed sentence?

4          MR. McCOSKEY:  No, Your Honor.

5          THE COURT:  Are you ready for me to pronounce

6     sentence, sir?

7          THE DEFENDANT:  Yes.

8          THE COURT:  I don't require the defendant to stand.

9     I figure this is hard enough.

10          It's the judgment of the Court that the defendant,

11     Richard Haught, is hereby committed to the custody of the

12     Bureau of Prisons to be imprisoned for a term of 60 months on

13     Count 1, and for a term of 64 months on Count 2 with the terms

14     to run concurrently for an aggregate term of 64 months.

15          Upon release from imprisonment, the defendant shall

16     be placed on supervised release for a term of three years on

17     each count with the terms to run concurrently for an aggregate

18     supervised release term of three years.

19          While on supervised release, the defendant shall

20     comply with the terms of supervision set forth in paragraphs

21     90 through 91 of the presentence report, the paragraphs that

22     the Court incorporates as part of today's sentence.

23          Mr. Haught, you have an absolute right to have me

24     read those conditions to you at this point.  If you have any

25     question about them, I urge you to have me do that.  You've

41

1   been sitting in here for an hour, so I'm not going to make you

2   sit here longer if you don't want them read to you.  So the

3   decision is entirely yours.  If you want to talk to Ms. Beitz

4   before answering the question, I urge you to, but my question

5   is do you want me to read those conditions to you?

6           THE DEFENDANT:  No, sir.

7           THE COURT:  You understand that I would if you

8   wanted to?

9           THE DEFENDANT:  Yes, yes, I do.

10          THE COURT:  So the record will show that Mr. Haught

11  expressly waived the reading in open court of the conditions

12  of supervision.

13          Because the defendant is not able, and even with the

14  use of a reasonable installment schedule is not likely to

15  become able to pay all or part of the fine recommended by the

16  sentencing guidelines, the Court imposes no fine.  The

17  defendant shall pay to the United States a special assessment

18  of $200, which shall be due immediately.

19          The Court recommends that the Bureau of Prisons

20  designate as a place of the defendant's confinement a facility

21  consistent with the defendant's security classification as

22  determined by the Bureau of Prisons where the defendant might

23  participate in the Bureau of Prisons RDAP program, and as

24  close as reasonably possible to his family and son in Indiana.

25          Ms. Beitz, do I recall correctly that the right of

42

1    appeal was waived as part of the plea agreement?

2            MS. BEITZ:  Yes, Your Honor.

3            THE COURT:  Thank you, ma'am, for accepting the

4    appointment to represent Mr. Haught under the Criminal Justice

5    Act.  Is there anything further for the defense today?

6            MS. BEITZ:  One request for the Court, Your Honor.

7    Paragraph 46 of the presentence report addresses a pending

8    trial out of Henry County, Indiana.  It's our understanding

9    that with the judgment of the Court today, the sentence

10   imposed, that that is going to be dismissed without prejudice,

11   and we ask that the final judgment reflect that so that no

12   detainer is imposed when the Bureau of Prisons decides where

13   to send him to.

14           THE COURT:  Can we have an addendum showing that's

15   the defendant's understanding?  Obviously we can't dismiss it.

16           PROBATION OFFICER:  How would you like -- would you

17   like the report revised or just an addendum?

18           THE COURT:  Just an addendum would do the trick so

19   they know to double check if anybody shows up with a detainer.

20           PROBATION OFFICER:  Sure, thank you.

21           THE COURT:  Thank you.  Anything further for the

22   Government?

23           MR. McCOSKEY:  Judge, pursuant to the plea

24   agreement, the United States will follow up with a written

25   motion to dismiss Counts 3 and 8 as to this defendant.

43

1          THE COURT:  All right.  Thank you, Counsel.  Good

2    luck, Mr. Haught.

3          THE DEFENDANT:  Thank you, sir.

4          COURT CLERK:  All rise.

5              (Court adjourned at 11:30 a.m.)

6    ****************************************************************

7                CERTIFICATE OF COURT REPORTER

8

9

10         I, Laura Howie-Walters, hereby certify that the

11   foregoing is a true and correct transcript from reported

12   proceedings in the above-entitled matter.

13

14

15   /S/LAURA HOWIE-WALTERS   August 8th, 2018

16   LAURA HOWIE-WALTERS, FCRR, RPR, CSR
     Official Court Reporter
17   Southern District of Indiana
     Indianapolis Division
18

19

20

21

22

23

24

25